**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cristi C Kauffman,<br><br>          Plaintiff,<br><br>v.<br><br>Michael P Kauffman, Sally M Colton, Cordell Law LLP, Trans Union LLC, and TransUnion Interactive Incorporated,<br><br>          Defendants. | No. CV-17-04463-PHX-DGC<br><br>**ORDER** |

Plaintiff Cristi Kauffman brought this action against her former husband, Michael Kauffman, his former counsel in their disputed state family-law case, Trans Union LLC, and Trans Union's wholly owned subsidiary, TransUnion Interactive Incorporated ("TUI"), after Mr. Kauffman allegedly obtained credit-monitoring services under Plaintiff's name through Trans Union and TUI. Doc. 1. Trans Union moved to dismiss on January 9, 2018, but the Court granted Plaintiff's request for leave to amend and denied the motion as moot. Doc. 36. Plaintiff filed a first amended complaint ("FAC") (Doc. 37), and Trans Union now moves to dismiss the FAC (Doc. 44). The motion is fully briefed, and no party requests oral argument. Docs. 52, 53. For the reasons explained below, the Court will grant Trans Union's motion.

## I. Background.

For purposes of this motion, Plaintiff's factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff and Mr. Kauffman divorced in January 2017. Doc. 37 ¶ 29. Plaintiff alleges that during the course of their subsequent family-law proceeding in Maricopa County Superior Court, Mr. Kauffman "obtained two consumer reports on [Plaintiff] under false pretenses from [Trans Union] through its wholly owned subsidiary [TUI]" and provided the reports to his attorney "for purposes outside the scope of permissible purposes" under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. *Id.* ¶¶ 1, 32.

The reports, attached to the complaint but heavily redacted (Doc. 37-1 at 2-45), were obtained through https://membership.tui.transunion.com on September 9, 2017, under the heading "Credit Monitoring" and subheading "Credit Report." The reports begin with an "Account Summary," which includes Plaintiff's credit score, balances, payments, number of open and closed credit accounts, inquiries, and other similar information. Doc. 37-1 at 2, 8. The reports also contain a "Personal Information" section, which includes Plaintiff's name, date of birth, current and previous addresses, and current and previous employers. *Id.* at 3, 9. The remainder of each report provides details regarding each of Plaintiff's accounts, inquiries, and public records. *Id.* at 3-7, 9-45.

The attorney used the reports "in evaluating and defending" Mr. Kauffman's position in the family law matter. *Id.* ¶ 36. Plaintiff first learned of the reports when they were turned over to her attorney with Mr. Kaufman's disclosure statement. *Id.* ¶ 39. Plaintiff was "emotionally upset" when she learned of the reports, and she worried that Mr. Kauffman obtained them partly for the purpose of locating and stalking her. *Id.* ¶ 71. Plaintiff went to Trans Union's website and contacted the customer service hotline. *Id.* ¶ 41. After two phone calls, Trans Union agreed that Mr. Kauffman's access was unauthorized, blocked his access, and froze the account. *Id.* ¶¶ 41-51. A few days later, Plaintiff received two letters – one from "TransUnion LLC" and one from "TransUnion

Interactive" – confirming the phone calls and the suspicious activity on her account. *Id.* ¶¶ 55-57; Doc. 37-1 at 47, 49-50.

Plaintiff alleges that Trans Union and TUI "failed to use proper care to assure that it was [Plaintiff] who was setting up the credit monitoring service, rather than an imposter." Doc. 37 ¶ 72. She further alleges that Trans Union and TUI "are alter egos of one another" and "worked in conjunction to provide the reports to" Mr. Kauffman. *Id.* ¶¶ 68-70. Finally, Plaintiff asserts that Trans Union and TUI provided a "consumer report" to Mr. Kauffman "without a permissible purpose allowed under the FCRA." *Id.* ¶ 74.

## II. Legal Standard.

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. Discussion.

Plaintiff asserts three claims against Trans Union: (1) negligent and (2) willful violation of 15 U.S.C. § 1681b(a), and (3) common law invasion of privacy. Doc. 37 ¶¶ 84-104. Trans Union argues that the first two claims fail because Plaintiff has not alleged facts showing a "consumer report" was involved, and the third claim fails because it is preempted by the FCRA. Doc. 44.

### A. Section 1681b(a).

The FCRA requires that a consumer reporting agency ("CRA") have a "permissible purpose" for furnishing a "consumer report." 15 U.S.C. § 1681b(a); *TRW, Inc. v. Andrews*, 534 U.S. 19, 23 (2001). Section 1681b provides an exhaustive list of the permissible purposes. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016). Trans Union concedes that it is a CRA. Doc. 44 at 1.

To state a § 1681b claim against Trans Union, Plaintiff must allege facts showing that Trans Union furnished a "consumer report" without a permissible purpose. *See* 15 U.S.C. § 1681b(a); *Rosco v. Experian Info. Sols.*, No. 2:15-CV-325-RMP, 2017 WL 6061977, at *7 (E.D. Wash. Dec. 7, 2017). Additionally, Plaintiff must allege that Trans Union acted negligently or willfully. 15 U.S.C. §§ 1681n, 1681*o*; *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA does not impose strict liability[.]").

Trans Union argues that the Court need not analyze the issues of permissible purpose or its culpability because Plaintiff has failed to allege that Trans Union furnished a "consumer report" at all. Doc. 44 at 4. The FCRA states:

> The term "consumer report" means any written, oral, or other communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for --
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d).

Trans Union argues that, other than a bare restatement of the statutory language, Plaintiff has not alleged that the reports at issue were "used or expected to be used or

collected" for the purpose of establishing Plaintiff's eligibility for credit, insurance, or employment, and therefore are not consumer reports. Doc. 44 at 5-6. Trans Union argues that the reports are "consumer disclosures" made by the CRA to the consumer, governed by § 1681g. *Id.* Trans Union explains: "if the credit information is requested by the consumer, it is a consumer disclosure," but if "the credit information is requested by a third party to determine eligibility for credit, employment or insurance[,] it is a consumer report." *Id.* at 6; Doc. 53 at 4 (citing *Sgouros v. Transunion Corp.*, No. 14 C 1850, 2016 WL 4398032, at *4 (N.D. Ill. Aug. 18, 2016)).

Some circuits have interpreted § 1681a(d) to require disclosure of the information to a third party. *See Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833-34 (7th Cir. 2004) ("There is no consumer report unless there is a 'communication . . . for the purpose of serving as a factor in establishing the consumer's eligibility for' credit or other statutorily enumerated purposes; i.e., there cannot be a consumer report without disclosure to a third party.") (internal citation omitted), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015) ("A 'consumer report' requires communication to a third party, while a 'file' does not."); *Eller v. Trans Union, LLC*, 739 F.3d 467, 474 (10th Cir. 2013) (defining a consumer report as "a communication of credit information to a third party"). District courts in this circuit have also applied such an interpretation. *See Liberi v. Taitz*, No. SACV 11-0485 AG AJWX, 2012 WL 10919114, at *5 (C.D. Cal. Mar. 16, 2012). Under this view, Plaintiff's § 1681b claim would fail because she does not allege Trans Union collected the reports for disclosure to a third party.

But two cases suggest the Ninth Circuit might disagree with an interpretation requiring disclosure to a third party. *See Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264 (9th Cir. 1990); *Guimond*, 45 F.3d 1329. In a case addressing the proper interpretation of § 1681a(d), the court of appeals held:

> The plain language of section 1681a(d) reveals that a credit report will be construed as a "consumer report" under the FCRA if the [CRA] providing the information *expects* the user to use the report for a purpose permissible

> under the FCRA, without regard to the ultimate purpose to which the report is *actually* put. Thus, if the user of the report led the agency preparing the credit report to believe, either through commission or omission, that the report was to be used for a consumer purpose such as for an employment purpose, the report *is* a consumer report within the meaning of the FCRA.

*Comeaux*, 915 F.2d at 1273-74 (internal citations omitted) (emphasis in original). Thus, as long as the CRA furnishes the report "based on a reasonable expectation" that it will be used for a listed purpose, it is irrelevant that the person obtaining the report does not intend to use it for a listed purpose. *Id.* at 1274; Doc. 52 at 3.

In *Guimond*, the Ninth Circuit considered whether a plaintiff must allege disclosure to a third party to succeed on a claim under § 1681e(b). 45 F.3d at 1332-34. That section requires a CRA to use reasonable procedures to ensure accuracy when it "prepares a consumer report." 15 U.S.C. § 1681e(b). The plaintiff in *Guimond* did not allege that the report was given to a third party or that she was denied credit as a result of its inaccuracies. The court of appeals held that a cause of action based on a CRA's failure to follow reasonable procedures to ensure the accuracy of the information it collects does not require transmission of the information to a third party, and can include damages based on emotional distress and humiliation. 45 F.3d at 1333. The case did not address the requirements for a violation of § 1681b, nor the meaning of a consumer report.

In light of these cases, the Court is reluctant to follow the approach of other circuits that require disclosure to a third party as part of the definition of a "consumer report." But even if the Court assumes that disclosure to a third party is not required, Plaintiff has failed to establish that Trans Union furnished a consumer report under the standard set forth in *Comeaux*.

Plaintiff asserts, without explanation, that "[a]ll or nearly all of the information in the report[s] was collected by Trans Union with the expectation that it would be used or collected in whole or in part for establishing eligibility for credit, insurance, employment, [or] other purposes authorized by 15 U.S.C. § 1681b." Doc. 52 at 2-3. Plaintiff further

argues that "[c]learly, this information was collected by Trans Union with the expectation of transmission to a third party[.]" *Id.* at 3. But Plaintiff provides no facts suggesting that Trans Union had a reasonable expectation that the reports would be used for a listed purpose or collected the information contained in the reports for a listed purpose.

The FAC alleges that Mr. Kauffman obtained the reports by fraudulently posing as Plaintiff, apparently through an online consumer portal. Doc. 37 ¶ 90; Doc. 37-1 at 2-38. The FAC does not explain why, from Trans Union's perspective, a consumer's request for information regarding her own credit would give rise to a reasonable expectation that the information would be used for a listed purpose. Plaintiff does not allege that Mr. Kauffman requested the reports under the pretext of a permissible purpose – let alone identify which permissible purpose. The FAC's legal conclusions that the reports are "consumer reports" and were "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing eligibility for credit or insurance or employment purposes," unsupported by any specific factual allegations, do not suffice. *See* Doc. 37 ¶¶ 34-35; *Iqbal*, 556 U.S. at 678.[1]

Plaintiff has not alleged sufficient facts to allow the Court reasonably to infer that Trans Union furnished a "consumer report" as defined in § 1681a(d) in violation of § 1681b. The FAC does not clearly articulate the circumstances under which the reports

---

[1] Although the parties did not raise the issue, the Court notes that a 40 year old Ninth Circuit opinion could be read to suggest that mere "collection" of any consumer information by a CRA is enough to make the information a consumer report. *See Hansen v. Morgan*, 582 F.2d 1214, 1218 (9th Cir. 1978) ("And unless the [CRA] was generally collecting such information for purposes not permitted by the FCRA, it must have collected the information in the report for use consistent with the purposes stated in the act."); *see also Ippolito v. WNS, Inc.*, 864 F.2d 440, 452-53 (7th Cir. 1988); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 884-85 (5th Cir. 1989); *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 696 (10th Cir. 1980). The Ninth Circuit did not rely solely on this "collection" rationale in finding a consumer report in *Hansen*, and it did not mention this idea in its more recent case, *Comeaux*. The idea also seems inconsistent with *Comeaux*'s holding that a Plaintiff must show that a CRA had a "reasonable expectation" that information would be used for a listed purpose. A broad reading of *Hansen* would mean that any consumer information a CRA communicates to anyone for any purpose is a consumer report under § 1681a(d). This idea is contrary to more recent case law and to the FCRA generally, which specifically defines consumer reports and distinguishes them from other information a CRA might furnish. *See Trans Union Corp. v. F.T.C.*, 81 F.3d 228, 231-32 (D.C. Cir. 1996); 15 U.S.C. § 1681g (referring to a CRA's disclosure of a consumer's "file"). The Court declines to adopt this broad reading on the basis of one ambiguous sentence in *Hansen*.

were obtained, and Plaintiff's briefing on this motion fails to clarify exactly what her legal theory is.

**B. Invasion of Privacy.**

Trans Union argues that Plaintiff's common law invasion-of-privacy claim is expressly preempted by the FCRA. Doc. 44 at 6 (citing 15 U.S.C. § 1681h(e)). Section 1681h(e) specifically addresses invasion of privacy:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any [CRA], . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Plaintiff argues that she should be permitted to assert invasion of privacy as an alternative claim in the event the FCRA does not apply. Doc. 52 at 4. The Court does not agree.

Although Plaintiff's FCRA claims against Trans Union fail for the reasons discussed above, the FCRA nonetheless governs the conduct alleged. A CRA's communication with and disclosure of information to a consumer is certainly regulated by the FCRA. *See, e.g.*, 15 U.S.C. §§ 1681g-k. And the FCRA expressly preempts common law claims for invasion of privacy based on a CRA's disclosure of information pursuant to §§ 1681g (consumer disclosures) or 1681h (additional requirements regarding consumer disclosures, including that a CRA must require a consumer to "furnish proper identification" before making disclosures). 15 U.S.C. § 1681h(e). Plaintiff's invasion-of-privacy claim against Trans Union is based on the same conduct as her FCRA claims: Trans Union's provision of her credit information in its capacity as a CRA. Doc. 37 ¶¶ 99-104. This claim is preempted under the plain language of § 1681h(e).

Plaintiff does not argue that she can satisfy the exception for claims involving "malice or willful intent to injure." Additionally, the FAC is devoid of any allegation that Trans Union had knowledge that it was disclosing her information to an unauthorized

user, and admits that Trans Union promptly remedied the situation when it discovered the unauthorized access.

**IT IS ORDERED** that Defendant Trans Union LLC's motion to dismiss (Doc. 44) is **granted**.

Dated this 1st day of June, 2018.

*David G. Campbell*
David G. Campbell
United States District Judge